# Supreme Court of Texas

No. 21-0470

Collin Creek Assisted Living Center, Inc. d/b/a DaySpring
Assisted Living Community,

*Petitioner*,

v.

Christine Faber, Individually and as Heir at Law of Carmelina
"Millie" Smith, Deceased,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE YOUNG, joined by Justice Blacklock, concurring.

The *Ross* factors attempted to impose order on chaos. But as so often happens with well-intended multifactor balancing tests, they instead have created a new battleground for waging costly collateral litigation of immense scope. The staggering number of cases from this Court and the lower courts, both before and after *Ross*, illustrates how many resources have been devoted to fighting over what the statutory definition of "health care liability claim" means. Tex. Civ. Prac. & Rem.

Code § 74.001(a)(13). Litigants spar over all the precedent-generated "tests" and "factors" and "prongs" and "nexuses." And we talk so much about "health care liability claims" that we long ago surrendered to the unsightly initialism "HCLC," which now litters many of our opinions (including, alas, this one).

Determining whether a claim is an HCLC should be a purely antecedent step—a sorting mechanism, a matter of taxonomy. Getting the sorting right is important, of course, but for reasons that have little to do with the merits. An HCLC must adhere to certain otherwise inapplicable procedural requirements, like providing a special kind of notice and, especially, a particular kind of expert report. HCLC status also affects limitations periods, whether certain elevated standards of proof apply, whether some kinds of damages may be curtailed, and other significant matters. Learning too late that a claim was an HCLC all along can mean that the claim is lost wholly aside from whether it had any merit, which is what we must hold today.

Getting the HCLC-or-not answer right is therefore of undoubted importance. The legislature is well within its rights to impose heightened standards on HCLCs and to prescribe the consequences that follow when those standards are not met. Precisely *because* HCLC status is so significant, clarity about *whether or not* a claim is an HCLC is, too.

The law should therefore make it as easy as possible to distinguish between HCLCs and non-HCLCs. Foundational to the rule of law itself is the principle that citizens should know what law governs them. And central to this Court's role, as I understand it at least, is the duty to facilitate that rule-of-law principle by generating transparent, reliable,

2

and intelligible articulations of what the law is (something that, to its credit, *Ross* sought to do). Unless answering the antecedent HCLC-status question is relatively simple, courts cannot work efficiently and the parties' limited resources must be expended on matters collateral to their merits dispute. After all, asking "is it an HCLC?" is meaningless aside from the role the answer plays in a real dispute.

True, it may never be as easy as looking at two pets and saying "that is a cat, and that is a dog." But under our cases (and, in fairness, under the complicated but vague statutory definition that we have labored to construe), the inquiry is more like taking biopsies of both pets and sending them off to high-priced laboratories for analysis by pathologists just to know what kind of pet food to buy.

Our current jurisprudential inability to provide ready guidance about HCLC status could set the stage for at least three possible reactions. First, plaintiffs could assume that any claim that remotely touches on healthcare or a physical injury is an HCLC and act accordingly. Of course, doing so is costly; experts are expensive, their time is valuable, and conceding HCLC status will cause the litigation to unfold in a very different way. But satellite litigation is expensive, too, so a plaintiff with a serious claim might choose to accept HCLC status from the start. Indeed, some plaintiffs may already have made this concession, even silently, solely to get on with their cases.

Second, the legislature could provide greater clarity by amending the definition. There are many ways it could do so. One would be to use brighter and more absolute lines, which may entail covering *more* claims or *fewer* claims than the current definition (and our current case law)

3

would ultimately reach. Being over- or under-inclusive (at least if measured from the perspective of the current morass) would at least generate greater clarity and certainty, along with the consequent savings of litigation time and expenses. It is the legislature's prerogative to decide if taking one of those approaches, or doing something else, is better than the status quo.

Notably, the legislature recently has mitigated some of the risk that previously befell plaintiffs who, at the end of lengthy litigation about HCLC status, learned that their characterization of their claim was wrong.* Ironically enough, however, that change only generates *more litigation*. It does not simplify the core problem, which is to determine whether a claim actually is a "health care liability claim" in the first place. Plaintiffs who may have taken the first option I listed above may now reconsider (which may be entirely proper if the only reason that they previously held back was the fear of losing their entire case).

Third, this Court could convert its reliance on factors into clearer rules. *Stare decisis* strikes me as posing less of an obstacle here than it otherwise might because our factor-laden HCLC jurisprudence may have

---

* A new statutory amendment provides a mechanism for a "preliminary determination for expert report requirement." Tex. Civ. Prac. & Rem. Code § 74.353. Specifically, it allows acceleration of the collateral litigation over "whether a claim made by the claimant is a health care liability claim." *Id.* § 74.353(a). This process ensures that a plaintiff who avails himself of it will not be caught flat-footed once the answer emerges, because he will have time to get an expert report if the claim turns out to be an HCLC. *Id.* § 74.353(b). But the new provision in no way simplifies *how* to make that determination and does not eliminate the burdens involved in doing so. The opposite may be more nearly true, because any claimant can seek such a determination and *either* side is empowered to take an interlocutory appeal of the trial court's answer. *Id.* § 74.353(a), (d). Dockets will likely see *more* HCLC litigation, not less.

4

"become[] less useful over time" as it "continues to generate confusion among parties and the judiciary" about the statutory definition. *Mitschke v. Borromeo*, 645 S.W.3d 251, 264 (Tex. 2022). Likewise, it is hard to see our cases as having generated "settled and reasonable reliance interests," *id.*, precisely because it is hard to rely on something as vague and unpredictable as the outcome of a multifactor test, *cf. City of League City v. Jimmy Changas, Inc.*, ___ S.W.3d ___, 2023 WL 3909986, at \*16 (Tex. June 9, 2023) (Young, J., concurring). And I fear that subjecting the bar, the public, and the courts over and over again to the labor-intensive effort of trying to figure out what an HCLC is resembles building a sand castle despite knowing that the tide will come. The longer we repeat such an effort, the more likely it will lead to "cynicism" about the use of the factors than to a sense of their "legitimacy." *Mitschke*, 645 S.W.3d at 266.

Supposing that we were willing to reconceptualize the HCLC definition, what would our new implementing "rules" be? The answer must, as always, start with the statutory text. I hasten to note that our cases have not ignored the text—quite the opposite. If it sounds as if "I come to bury the *Ross* factors, not to praise them," then—like Mark Antony—I at least offer up substantial praise in fact. I read our precedents to have earnestly sought to give practical meaning to statutory terms that are defined with complexity (including by relying on *other* broadly or vaguely defined statutory terms). In my view, however, these terms should provide for articulable rules and sub-rules, not a balancing or weighing of factors.

Clear rules through case law, in turn, will facilitate interbranch dialogue that is healthy for the law of a self-governing people. The

5

legislature sets policy; the courts provide clarity about the policy by stating what the content of law is, allowing individual citizens to order their affairs accordingly; and the legislature responds with adjustments as needed. When the courts offer up a host of factors, it may well be (although I have my doubts) that the outcome of any given case will more closely reflect the original policy choice. But those factors have an anesthetic quality, too. Their very lack of certainty makes it harder for the legislature to take aim at them and make clear changes.

But neither party here asks us to step away from the conglomeration of the *Ross* factors or to wipe away any other cobwebs from the case law. In my judgment, the Court today applies the *Ross* factors as correctly as they can be applied. It well discharges its duty to provide thorough guidance to the extent the factors allow—a difficult task, to be sure. At the same time, though, I find much about the dissent appealing and praiseworthy—especially its implicit invitation to generate clearer and simpler rules that will govern entire categories of cases.

If the legislature chooses to retain the current statutory definition, I hope that a future case will give us the opportunity to reconsider our framework for determining when a claim qualifies as an HCLC. With these comments, I join the Court's opinion and its judgment.

Evan A. Young
Justice

**OPINION FILED:** June 30, 2023

6